## CROWLEY *v.* STATE.

### Opinion delivered April 29, 1912.

1. APPEAL AND ERROR—HARMLESS ERROR.—If it was error to permit a witness in a murder case to testify as to dying declarations made by the person slain, such error was harmless where other witnesses were permitted without objection to testify as to the same statement.   (Page 318.)

2. EVIDENCE—RES GESTAE.—Statements made by a person immediately after he was mortally wounded relating to the manner of his killing were admissible as part of *res gestae*.   (Page 318.)

Appeal from Greene Circuit Court; *Frank Smith*, Judge; affirmed.

*B. H. Crowley*, *L. C. Going* and *Block & Kirsch*, for appellant.

1.   Dying declarations, when merely matters of opinion are inadmissible.   39 Ark. 221;  63 *Id.* 384;  52 *Id.* 347.

2.   Dying declarations, to be admissible in evidence, must be made under the consciousness of the approach of death— *in extremis.*   Wigmore on Evidence, § 1439;  Greenleaf on Evidence (16 ed.), § 158;  90 Mo. 54;  55 Cal. 76.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

The statements of deceased immediately after the shooting were dying declarations, and properly admitted as such.   They were also admissible as *res gestae.*   39 Ark. 229; 52 *Id.* 345-7;  38 *Id.* 495;  58 *Id.* 47;  88 *Id.* 579;  68 *Id.* 355; 81 *Id.*  417; 1  Gr. Ev. (16 ed.), § 158; 2 Ark. 299; 146 U. S. 140-151;  3 Russell on Crimes (Int. Ed.) 391; 48 Mich. 474; 49 Ore. 46; 103 Ala. 12;  17 *Id.* 618;  104 Ia. 730;  115 N.  C. 321;  42 Fla. 528;  Underhill on Ev., § 104;  4 Enc. of Ev. 969, 971.

McCulloch, C. J.   The defendant, Louis Crowley, appeals from a judgment of conviction of the crime of murder in the second degree, alleged to have been committed on the streets of the city of Paragould on Sunday morning, May 14, 1911, by killing one George Smith, who was a police officer of that city.   Some one shot Smith with a shotgun in front of the postoffice about 3:30 o'clock in the morning.   One of the witnesses, Albert Bain, was at work in the postoffice, and testified that he heard the shot, and immediately thereafter heard some one at the door uttering a cry of distress and saying: "Let me in; Louis Crowley has shot me; my name is George Smith, and Louis Crowley has killed me; for God's sake, let me in;" that he (witness) climbed up on a table and looked over the partition, and saw George Smith in the lobby on his hands and knees, and that he then opened the middle door, and Smith crawled in far enough for him to shut the door, and that Smith asked him to send for a doctor.   A physician was called, and Smith was removed to a sanitarium, and died the following Tuesday morning.   He stated to the physician, while still at the postoffice, and also stated to a number of other persons, between that time and his death, that Crowley was the man who shot him.   He said that he was standing in

front of the door and started to step inside when Crowley came out from the side of the postoffice building with a shotgun and shot him, stating positively that at the time he recognized Louis Crowley as the man who fired the shot. Witness Bain expressed some uncertainty as to whether Smith at first said that Crowley had shot him or had killed him. After the physician came, Smith stated, according to the testimony of Bain, that he was killed, and, in answer to a statement made by persons suggesting that perhaps he was not hurt as badly as he thought, he replied that he had a fatal wound. Smith asked the physician if his bowels were wounded, and, being told that his question could not be answered positively, replied: "If they are I can not live, and if they are not I may." Subsequently, at the sanitarium, he said to his father: "I guess I am killed," and stated that Louis Crowley did it, and pulled two rings off his fingers, one of his own and other the ring of the young lady he was visiting, and handed them to his father to keep. Still later he said to a friend who lived out in the country: "George, I don't think I will ever be in your settlement again," and followed this by a statement that Crowley was the man who shot him.

There is some evidence of previous ill-feeling between the two men. In the early part of the night of the killing, Smith and the chief of police went to a bawdy house by instructions of the mayor to take observations of the men who visited the house, and a little after 12 o'clock defendant was there, and had a difficulty with Smith, in which he drew his knife and Smith drew his pistol. Defendant was arrested by Smith and the chief of police, and taken to police headquarters, where a charge was lodged against him, but he was released without bond on his plea that his wife was about to be confined, and that he wanted to go to her. Another witness, Langley, testified that, about eight or ten minutes before he heard the shot fired, he met defendant on the street about a block from the postoffice, and took a drink with him, and that as he walked away he met Smith within a block going in that direction, and in a few minutes thereafter heard the shot fired. Defendant did not testify in his own behalf, but introduced numerous witnesses to establish the fact that he went home about 12 o'clock and remained there until he was arrested about 5

o'clock in the morning. Members of his family testified that he came home at that time and remained there, and other witnesses testified as to seeing him go home about 12 o'clock and finding him at home and in bed about 3 o'clock.

It is argued with much earnestness that the verdict should be set aside because it is not supported by sufficient evidence. We are of the opinion, however, that the evidence is quite sufficient to sustain the verdict.

It is contended that the testimony as to the alleged dying declarations is incompetent for the reason that the statement was not made *in extremis.* The testimony of only one witness who testified as to the dying declarations was objected to, and, even if we should hold that the testimony was incompetent, no, prejudice resulted for the reason that several other witnesses were permitted to testify without objection to the same facts. However, there was sufficient evidence to warrant the court in admitting the testimony as to dying declarations. The law on this subject is discussed at length in *Rhea* v. *State,* 104 Ark.— and need not be repeated here. The testimony of witness Bain as to what was said by Smith immediately after the shooting was clearly competent as part of the *res gestae.* It occurred immediately after the shooting, and was undoubtedly a part of the transaction. Even without the dying declarations, this, together with the other circumstances in the case, was sufficient to warrant the verdict.

Judgment affirmed.