WARD v. FORT SMITH LIGHT & TRACTION COMPANY.

Opinion delivered May 1, 1916.

1.  APPEAL AND ERROR—ANSWER TO QUESTION—PREJUDICE.—No prejudice is shown where the trial court refused to permit a witness to answer a question propounded to him, where it is not shown in the record what the answer of the witness would have been.

2.  APPEAL AND ERROR—REVERSAL OF CAUSES—PREJUDICE.—The Supreme Court will reverse a cause for an error only which is prejudicial.

3.  APPEAL AND ERROR—QUESTION—PREJUDICE.—In an action for damages where plaintiff was struck by a moving street car, it is not prejudicial error for the trial court to refuse to permit a witness to state how fast the car was going when it passed witness's house, which was several blocks from the scene of the accident, when it was not shown that the car had not been stopped between plaintiff's house and the scene of the accident.

4.  EVIDENCE—SPEED OF CAR—PERSONAL INJURY ACTION.—In an action for damages for personal injuries resulting from a collision with a street car, evidence of the speed attained by cars of the company other than the one involved in the collision, *held* inadmissible.

5.  EVIDENCE—PERSONAL INJURY—TESTIMONY AS TO WHERE PARTIES HAD BEEN.—In an action for damages for personal injuries, when deceased and a companion were struck by a street car, while riding in an automobile, where the companion had testified where he and deceased had been that evening, without objection, it is not error for the court to permit the automobile driver to testify where the parties had been.

6.  APPEAL AND ERROR—REVIEW—FAILURE TO EXCEPT.—The action of the trial court will not be reviewed on appeal where no exceptions were saved at the tral.

7.  APPEAL AND ERROR—REPETITION OF INSTRUCTIONS.—The trial court is not required to multiply or repeat instructions.

8.  NEGLIGENCE—COLLISION BETWEEN STREET CAR AND PUBLIC AUTOMOBILE—INJURY TO PASSENGER IN LATTER.—Deceased was riding in a public automobile when he was struck by a moving street car and killed. *Held*, if deceased was killed by the concurrent or combined negligence of the defendant car company, and of the driver of the automobile, the car company would be liable; no negligence of the driver of the automobile affected the right of recovery, unless such negligence was the sole cause of the accident.

9.  STREET RAILWAYS—SPEED OF CARS—NEGLIGENCE—VIOLATION OF CITY ORDINANCE.—The mere fact that a street car was driven at a rate of speed forbidden by the city ordinances, will not be considered proof of negligence, as a matter of law, it is but an evidential fact tending to prove negligence and the question of negligence is one of fact for the jury.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little*, Judge; affirmed.

STATEMENT BY THE COURT.

Appellant instituted this action against appellee to recover damages for personal injuries which he alleges were sustained by his decedent by reason of the negligence of appellee. The material facts proved by appellant are as follows:

On the 24th day of August, 1915, Jim Crowe, a driver of a public taxicab received a call to go to 219 First Street, for Joe Ward, Jr. and Carroll Milton. He received them in his automobile and started home with them. It was raining very hard at the time and the wind

shield was down. He started east on North C Street and drove at the rate of twelve or fifteen miles an hour. When he came to the alley on C Street between Fourth and Fifth Streets, he brought his car practically to a stop because Ward told him that he had lost his keys and would like to return for them. Ward announced that he had found his keys and the machine then proceeded up C Street towards Fifth Street. Crowe looked as far as he could see in each direction and did not see any street car approaching. There was a street car track on Fifth Street and the automobile started across the street car track and the car was within fifteen feet before the driver of the automobile saw it. His machine could have been stopped in twenty feet at the rate it was traveling. The street car was being propelled at a very high rate of speed. As soon as the driver of the automobile saw it he tried to turn his machine up Fifth Street in order to avoid the collision, but was unable to do so. The street car struck the automobile with great violence and the automobile was carried about 150 feet after it was struck by the street car. Crowe testified that neither he nor Ward nor Milton had been drinking any that evening; that neither Ward nor Milton exercised any control over the automobile; that they simply gave him directions to take them home for which they paid him; that C Street ran at right angles with Fifth Street; that there was an arc street light at the intersection of C and Fifth Streets and that this tended to obliterate the light on the street car; that no bell or gong was sounded by the motorman on the street car as it approached; that the street car was traveling over twice as fast as the automobile and was right on them before they saw it. Ward died from the effects of the injuries received by him in the collision. The physicians who attended him testified that he suffered great pain before he died and that he was conscious of the pain.

Carroll Milton, in all essential respects corroborated the testimony of the driver of the automobile. Other witnesses who resided in the neighborhood of the place

where the collision occurred or who happened to be on the streets there, testified that the street car was coming at a very high rate of speed when it struck the automobile. Some of them stated that it was going at the rate of over forty miles an hour. One witness stated that he was at the intersection of D and Fifth Streets about a block away from where the accident occurred and that he saw the street car for some distance before it passed him; that it was going at an exceedingly high rate of speed and that it did not check its speed before the collision with the automobile. It was shown on the part of appellant that the street car was going down grade for several blocks before it reached the scene of the accident and that it did not stop or check its speed as it approached the street crossing.

Leonard Baker, the motorman on the street car the night of the accident, a witness for appellee, testified: I have had four years experience as motorman. The car which ran into the automobile on the night in question was car number 22. It was a forty passenger, double brake car, equipped with air brakes and was known as the owl car. It leaves the car barn at 12:15 A. M. and runs to Electric Park, then returns to the car barn, picks up the car men who have come in from runs and takes them into Fort Smith, going south on Fifth Street to Garrison Avenue, around on Third and Second Streets, loops back to Garrison Avenue to Eleventh Street and then to the car barn. On the night of the accident I had three men on the car in addition to the conductor and myself. It was raining hard and the track was slick. As I crossed D Street and approached C Street, I sounded the gong and shut off the power. I saw the automobile approaching. In my judgment, I was running only eighteen miles an hour. I was standing in the proper place on the car with my face close to the window shield looking ahead. When I got to the intersection of C and Fifth streets, I saw an automobile coming from the west up C street. It was about fifteen feet from the street car track when I first saw it. I put on the air brakes and the emer-

gency brake. The car collided with the automobile and the accident happened at exactly 12:35 o'clock on the morning of August 24, 1915. After I applied the emergency brake the wheels became locked at the distance of about fifteen feet and the car traveled after that 110 feet before it stopped.

Other witnesses for the defendant corroborated the testimony of the motorman. Other witnesses for the defendant testified that they had made a test of the speed of car number 22 and found that it could not run at a greater rate of speed that twenty-six or twenty-seven miles an hour. The test also showed that the motorman stopped the car on the night of the accident as soon as it could have been stopped.

Other facts will be referred to in the opinion. From a verdict and judgment in favor of appellee appellant prosecutes this appeal.

*Read & McDonough* and *Winchester & Martin*, for appellant.

1. The court erred in excluding the evidence of witnesses tending to show the high rate of speed of the street car. 92 Atl. 185; 42 App. D. C. 532; 93 Atl. 666; 108 N. W. 271; 116 *Id.* 933; 235 Ill. 275; 47 S. E. 850; 115 Ky. 883; 118 Wis. 210.

2. It was error also to exclude the evidence of E. F. Creekmore. 99 Ark. 597; 66 S. E. 817; 92 Ark. 569; 74 Atl. 519; 124 S. W. 140; 74 Atl. 401; 235 U. S. 429; 44 Ark. 468; 69 N. E. 486; 112 Ark. 589; 128 Mich. 149; 171 *Id.* 180; 215 Mo. 394, etc.

3. The evidence of Jim Crowe and Carrol Milton as to where deceased had been was inadmissible. Elliott on Ev., § § 156-7, 975 to 978.

4. The traffic ordinances were admissible in evidence to show negligence. 27 A. & E. Enc. Law, 62 to 66; 121 S. W. 690; 67 So. 278; 108 Pac. 211; 113 S. W. 1126; 128 S. W. 5; 69 N. E. 1123 and many others. 27 R. I. 499; 71 S. W. 565; 172 *Id.* 843; 174 S. W. 1170; 68 So. 509; 218 Mass. 52; 168 S. W. 247; 167 *Id.* 471.

5. Review the instructions contending there was error and cite 95 Ark. 108; 196 Ill. 410; 87 Minn. 280; 150 N. W. 31; 92 Atl. 185; 92 *Id.* 1015; 93 *Id.* 666; 42 App. D. C. 532; 92 Ark. 350; 86 *Id.* 289; 91 *Id.* 260; 88 *Id.* 181, 292; 90 *Id.* 326. A violation of an ordinance creates liability. 112 Ala. 425; 123 Cal. 275; 43 Md. 534; 40 Mo. 506; 40 Neb. 29; 27 A. & E. Enc. L. 61-2 note 5, 478. It is error to give conflicting instructions. 79 Ark. 12; 82 *Id.* 424; 83 *Id.* 202; 87 *Id.* 76; 94 *Id.* 282; 112 *Id.* 305. See also 116 Ark. 125; 117 Ark. 337. Mere repetitions of instructions is erroneous. No. 17 is a mere comment on the evidence. It is the duty of a motorman to use due care at all times. 167 S. W. 924; 116 Ark. 25; 117 Ark. 337; 105 N. E. 609.

The defendant's instructions conflict with those given for plaintiff. The negligence of a driver could not be imputed to deceased. 72 Ark. 572; 137 Pac. 31; 145 N. W. 923; 141 Pac. 868; 91 Atl. 405; 150 N. W. 164; 93 Atl. 666 and many others.

*Hill, Fitzhugh & Brizzolara* and *Oglesby, Cravens & Oglesby,* for appellee.

1. It was not error to exclude the testimony of Sailor and others as to the speed of the car. 106 Ark., *King v. State;* 88 Ark. 562; 97 *Id.* 564. Testimony as to the speed of the car at other places was properly excluded. Patterson Ry. Acc. Law, § 364; 58 Ark. 468; 81 *Id.* 596; 58 *Id.* 468.

2. It was not error to exclude Creekmore's evidence as to a race he had with a car a month before the accident. 1 Elliott on Ev., § 157; 1 Greenl. on Ev., § 14a.

3. There was no error in admitting the testimony of Crowe and Carroll. At all events it was harmless. 112 Ark. 401; 103 *Id.* 315, 318; 84 *Id.* 16; 85 *Id.* 123; 99 *Id.* 302; 103 *Id.* 318.

4. Every ordinance offered was admitted in evidence. The remark of the court was not a ruling, and the remark was not objected to. 116 Ark. 125.

5. There is no error in the instructions. Taken together they correctly state the law. 89 Ark. 300; 84 *Id.* 74; 92 Atl. 185, 1015; 93 *Id.* 666; 89 Ark. 574; 96 *Id.* 531; 101 *Id.* 433; 108 *Id.* 99. The record presents no prejudicial errors.

HART, J., (after stating the facts). (1-2) I. It is insisted by counsel for appellant that the court erred in excluding the testimony of certain witnesses tending to show the high rate of speed of the street car at places along the track on Fifth street before the car reached C street. The witnesses referred to are W. H. Sailor, Louis Adams and Mrs. Ed. Haglin. The record shows that on the night of the accident, W. H. Sailor resided at 929 N. Fourth street. His residence was therefore about eight blocks from the scene of the accident and one block from the street car line. He testified that he observed the car as it passed prior to the time of the accident but he stated that he did not know anything about the speed of a street car or a railway train. He said of course he could tell whether a car was running fast or slow. He was then asked if the car in question was traveling at a high or low rate of speed and an objection was made and sustained to the question. While the witness was not permitted to answer the question, it was not shown what his answer would have been. No effort was made to prove any specific fact by the witness in response to the question. This court only reverses for prejudicial errors and in order to obtain a review of the ruling of the trial court, it was necessary to show what the answer of the witness would have been. *Boland* v. *Stanley*, 88 Ark. 562; *New Hampshire Fire Ins. Co.* v. *Blakely*, 97 Ark. 564.

(3) Louis Adams lived at 410 N. E street. He was permitted to testify that he was awakened by a car going by just before the time of the accident, but stated he could not tell at what rate of speed the car was going by the noise it made. The court stated that it would permit him to testify as to whether or not he knew that the car was going at a high or low rate of speed. The witness again stated that he could not tell the rate of the speed

at which the car was going by hearing it. He was asked the direct question "Could you tell by hearing it pass whether it was passing at a high or low rate of speed?" His answer was, "I could not tell anything about the speed of the car on account of the fact that I do not know how far it got from me before I got wide awake." Then he was asked: "If you heard that car pass your house couldn't you tell whether or not it was traveling at a high or low rate of speed?" This question was objected to and the objection sustained. Here again no attempt was made to show what the answer of the witness would have been and the action of the court was not reversible. Moreover, the witness had already stated that he could not tell at what rate of speed the car was going by hearing it pass. He had made this answer twice and it was in the discretion of the court not to allow a repetition of the same question. Mrs. Haglin resided at the corner of Fifth and D streets. She was first permitted to state that it seemed to her that she had never heard the owl car going by as fast as it did just before the accident. She further stated that she did not pay attention to the car after it passed her house but that she heard it approach. It was then offered to prove by her that the car which came into collision with the automobile was going by at a high rate of speed when it passed her house and the court refused to permit this testimony to go to the jury. At the time the testimony was offered there was no showing as to whether or not the car was stopped after it passed her house or checked its speed before it reached the scene of the accident. She stated that she did not pay any attention to the car after it passed her house. Under these circumstances, the action of the court was not reversible error. Afterwards appellant was permitted to show that the car was going at a high rate of speed for several blocks before it reached the crossing at C street. Doubtless if the counsel had again offered the testimony, the court would have permitted it to go to the jury.

(4) II. Counsel for appellant insists that the court erred in refusing to permit the witness Creekmore to testify that he had had a race with one of the cars of appellee at another time and place and that this car had passed his automobile while his automobile was going at the rate of thirty-eight miles per hour. Appellee had shown by two witnesses that car number 22, being the car that collided with the automobile, was geared for twenty-three miles an hour; that they had made a test of the speed of this car on a straight track and the car had made twenty-three miles per hour in one direction and twenty-seven miles per hour in the other one, the latter course being slightly down grade. Counsel for appellee confined the testimony of its witnesses to the speed of car number 22 and did not ask with reference to the speed of any other of its cars. On cross-examination counsel for appellant asked about the speed of other cars, but it was not shown that these cars were geared in the same way as car number 22, or were so constructed that they would naturally have the same speed. Under these circumstances the court was right in excluding the evidence because the excluded evidence related to collateral transactions and would tend to confuse the issues. Greenleaf on Evidence, volume 1, section 14a; 1 Elliott on Evidence, section 157. If the appellee had brought out that its other cars could not run faster than a given rate of speed, then there might be much force in the argument of counsel for appellant and it might be said that the evidence should have been admitted in rebuttal.

(5) III. It is claimed by counsel for appellant that the court erred in admitting the testimony of Jim Crowe, the driver of the automobile, as to the place Ward and Milton had been just prior to the accident. It is a sufficient answer to this assignment of error to say that Carroll Milton, the companion of Ward, testified without objection as to the place they had been when they called the automobile. Therefore, no prejudice could have resulted to appellant on this account and we need not consider

further this assignment of error.   *Crowley* v. *State,* 103 Ark. 315.

(6)   IV.   The next error assigned by counsel for appellant is the alleged refusal of the court to permit certain traffic ordinances of the city of Fort Smith to be read in evidence.   The record shows that the court permitted to be read to the jury, the ordinances offered by counsel for appellant.   It is true the court limited the purpose for which the jury might receive one of the ordinances introduced, and the record does not show that counsel for appellant excepted to the action of the court in this regard. It follows that the assignment of error is not well taken.

V.   It is next contended that the court erred in refusing to give instruction number 1 asked for by counsel for appellant.   The instruction reads as follows:

"1.   The complaint charges that the defendant was guilty of negligence (1) by running the street car at a high, excessive and terrific rate of speed over the streets of the city of Fort Smith, and that without warning, and that it was also negligent in not keeping a proper and careful lookout ahead for persons that might be upon its track in said city, and that it was also negligent in not stopping the street car after the operatives of said street car had observed the perilous position of the plaintiff, and that defendant wilfully and wantonly ran said car down upon the deceased, and killed him.   Each of these acts of negligence is denied by the defendant, and it also alleges contributory negligence on the part of the deceased.   These are the issues to be tried by the jury."
The court however gave instruction A which reads as follows:

"A.   The plaintiff seeks recovery upon three alleged grounds of negligence of the defendant's employees operating the street car, towit:   (1)   That they were operating the street car at an unlawful, violent and terrific rate of speed and without warning by bell or otherwise.   (2)   That they were not keeping a proper lookout for persons and property upon the tracks.   (3)   That the

motorman, after he had discovered the dangerous and perilous position of the automobile in which Ward was riding failed to use reasonable efforts to stop said car and prevent the injury. Before the plaintiff can recover he must establish by a preponderance of the testimony that the defendant was guilty of some one of said alleged acts of negligence, and further, that said act·of negligence, if proved, was the direct cause of the injury."

(7) It will be seen that the issues presented by instruction number 1 are clearly stated in instruction A and· it is well ·settled that the court is not required to multiply or repeat instructions.

VI. It is next insisted that the court erred in refusing to give instructions numbered 3 and 5. The instructions read as follows:

"3. If Joe N. Ward, Jr. was a passenger in the automobile, and if the driver ·of the automobile was negligent, and if the operatives of the street car were negligent, and if the negligence of said driver and operatives combined and caused the death of said Ward, then the· jury should find for the plaintiff."

"5. If the street car was negligently operated, and if that negligence either alone or combined with the negligence of the driver of the automobile, caused the death of Joe N. Ward, Jr., then it will be the duty of the jury to find for the plaintiff."

The court, however, gave instructions numbered 2 and 4, at the request of counsel for appellant. They read as follows:

"2. If the deceased, Joe N. Ward, Jr., was .at the time of the collision a passenger in the automobile and if he was not ·at the time directing or controlling its movements, then the negligence of the driver of the automobile, if there was such negligence, can not be imputed to said Joe N. Ward, Jr., and if under those circumstances the driver of the automobile was negligent, that negligence if it existed, can not defeat a recovery 'by the plaintiff herein; provided the negligence of the defendant, if there was such negligence, caused the death of said Joe N.

Ward, deceased. But if you find that the negligence of the driver of the automobile was the sole cause of the accident, you will find for the defendant.''

"4. If the jury should find that the death of Joe N. Ward, Jr., was caused by the combined negligence of the driver of the automobile, and the street car operatives, the fact that the owner of the automobile and the driver thereof are not joined as defendants, will not defeat the right of the plaintiff to recover against the defendant, if the latter was negligent as herein defined, if you find under the other instructions that plaintiff is entitled to recover.''

(8) The issues embraced in three and five are clearly presented in instructions 2 and 4. The contributory negligence of decedent was not submitted as an issue to the jury. No instruction authorizes the jury to pass upon that question. The court plainly told the jury in a number of instructions that no negligence of the driver of the automobile could be imputed to the decedent. The instructions when considered as a whole plainly told the jury that if decedent was killed by the concurrent or combined negligence of appellee and of the driver of the automobile that appellant had a right to recover; that no negligence of the driver of the automobile affected appellant's right to recover unless the negligence of the driver of the automobile was the sole cause of the accident.

The car track ran along Fifth street, and C street crossed it at right angles. The accident occurred at the junction of Fifth and C streets. There was evidence tending to show that the street car approached the crossing at a high rate of speed and that the motorman failed to give the signal of the approach to the crossing. According to the evidence of appellant, the street car was going faster than allowed by the traffic ordinances of the city. It also appears from the evidence adduced by appellant that the automobile very nearly stopped as it approached the crossing and the occupants of the automobile were in

a position where they could and naturally would have heard the signal for the crossing if it had been given by the motorman operating the street car.

(9)   The evidence was sufficient to carry the case to the jury upon the question of defendant's negligence. There is an irreconcilable conflict in the decisions as to the effect of the violation by a street railway company in the operation of its cars of regulatory ordinances, designed to promote the public safety. Our court has already taken a position on this question. According to our decisions, the mere fact that the street car was driven at a rate of speed forbidden by the city ordinances would not be considered proof of negligence as a matter of law. It is but an evidential fact tending to prove negligence and the question of negligence is one of fact for the jury. *Bain* v. *Fort Smith Light & Trac. Co.,* 116 Ark. 125.

In the case of *Pankey* v. *Little Rock Ry. & Elec. Co.,* 117 Ark. 337, the court held, "A street car company has the paramount or preferential right-of-way along the place occupied by its tracks, whenever the point arises that one must yield, either the company in the operation of its cars, or the traveler along or across the street; but the duties of all who use the streets are reciprocal, and the paramount right of the street railway company is subject to the reciprocal rights and duties of others, and no one user of the street has a right to pursue his course without anticipating the possibility of danger to others."

The court in the instant case instructed the jury in accordance with the principles of law laid down in the Bain and Pankey cases just referred to. Other assignments of error in regard to the giving and refusal of the court to give instructions, and alleged errors in modifying some of the instructions are pressed upon us for the reversal of the judgment. It would unduly extend the length of this opinion to discuss separately and in detail all of these alleged assignments of error. We deem it sufficient to say that we have not overlooked them, but have considered them in a careful manner. Numerous instructions were given by the court at the request of

counsel on both sides. Both parties to this law suit were represented by skilled attorneys. The record is voluminous and shows that the case was carefully tried. We think that the instructions given by the court fully presented the theories of both parties to the jury. We think that the refused instructions, so far as they were applicable to the issues presented by the pleadings, were covered by the instructions given by the court. The jury has said by its verdict that it believed the witnesses for appellee.

We have found no error in the record calling for a reversal of the judgment, and it will be affirmed.