# FORT SMITH LIGHT & TRACTION COMPANY
## v. HENDRICKSON.

### Opinion delivered November 13, 1916.

1. NEGLIGENCE—PERSONAL INJURY—OPPORTUNITY TO AVOID INJURY.—Plaintiff, while riding on a fire wagon, in the course of his duty, was struck by a street car at a street crossing and injured. *Held*, an instruction that the motorman was under a duty to stop his car, if in the exercise of ordinary care he could have heard the approach of the fire wagon, was proper.

2. EVIDENCE—PERSONAL INJURY ACTION—TESTIMONY AS TO SIMILAR CONDITIONS.—In an action for damages for personal injuries, sustained by a fireman, who, while riding on a fire wagon, was struck at a blind street crossing and injured by a street car, testimony by witness, that while riding on a street car upon another occasion, that he could hear the approach of a fire wagon while nearing the said crossing, is competent.

3. TRIAL—IMPROPER REMARKS OF COUNSEL—ADMONITION BY COURT—PERSONAL INJURY ACTION.—In an action for damages for personal injuries, counsel for plaintiff, during argument, made some improper remarks; the defenant objected, and "thereupon counsel for plaintiff attempted to withdraw said remarks and the court admonished the jury to disregard them." *Held*, what the court actually said was not in the record, but that it will be presumed, in the absence of a showing to the contrary, that the language of the court was sufficient to remove from the minds of the jury any prejudice created by the remarks of plaintiff's counsel.

4. DAMAGES—PERSONAL INJURIES—ELEMENTS OF DAMAGE—EARNINGS AS BOXING TEACHER.—In an action for damages for personal injuries, the plaintiff may show, in proof of his damages, a loss of earnings, by his inability to act, after the injury, in the capacity of a teacher of boxing, at which business he was earning about $75 per month.

5. DAMAGES—AMOUNT—PERSONAL INJURY ACTION.—Plaintiff was injured by defendant's negligence, suffered great pain, and his ankle was permanently injured; he was earning $75 per month as a fireman, and $75 per month as a boxing instructor. *Held*, a verdict awarding $8,500 damages was not excessive.

6. NEGLIGENCE—PERSONAL INJURIES—INJURY TO CITY FIREMAN.—Plaintiff, an employee in a city fire department, was injured while driving on a  fire wagon to a fire, by being struck by a street car; plaintiff had nothing to do with driving the fire wagon. *Held*, no negligence of the driver of the fire wagon affected plaintiff's right to recover unless the negligence of the driver of the fire wagon was the sole cause of the accident.

Appeal from Sebastian Circuit Court, Fort Smith District; *Geo. W. Dodd*, Special Judge; affirmed.

STATEMENT BY THE COURT.

Appellee sued appellant to recover damages which he alleges were sustained by one of appellant's street cars negligently colliding with a fire wagon in which he was riding. The material facts are as follows:

Appellee, Leo Hendrickson, was a fireman employed by the city of Fort Smith and appellant was a corporation operating a street car line in that city. On the afternoon of August 11, 1915, appellee was injured by one of appellant's street cars colliding with a fire wagon in which appellee was riding on his way to a fire. The accident occurred at the intersection of A and Fifth streets. Fifth and Sixth streets run north and south, and are parallel to each other. A and B streets run east and west and are parallel to each other. These streets are 300 feet apart and are 50 feet wide, including sidewalks. Garrison avenue is 100 feet wide. A fire station is situated on Sixth street, one hundred feet north of the corner of A street, and the distance from the fire station down A street to Fifth Street, where the accident occurred, is a little over 400 feet. Garrison Avenue is one block south of where the accident occurred. A fire alarm was turned in from a point between Fourth and Fifth streets on Garrison Avenue. Four fire wagons left the station, above referred to, and appellee was on the first wagon that left the station, riding on the seat with the driver. All the fire wagons were equipped with rotary bells, but the front wagon, upon which appellee was riding was equipped with a triple stroke rotary bell which could be heard above the rest. The gong upon each fire wagon was rung continuously from the time they left the fire station until the accident occurred, and the wagons themselves made considerable noise, each having steel tires and being drawn by horses over brick paved streets. According to the testimony of the plaintiff, the fire wagon on which he was riding was going at a speed of ten or twelve miles an hour, and according to the testimony of the motorman of the street car, it was traveling

at a speed of fifteen miles an hour.   The fire wagon was
driven down Sixth street to A street, and was then turned
down A street.   The driver said that he intended to turn
into Fifth street and began to pull up when he was within
35 feet of the street car and before he saw it.   After he
saw the car, thinking he would not have time to make the
turn, he attempted to drive straight across the track.
The street car struck the right hind wheel of the fire
wagon and knocked it over so that the fire wagon
struck the curb on the southwest corner of Fifth and A
streets.   The collision occurred in the center of A street.
Appellee was on a seat with the driver, but had no con-
trol over the team or wagon.   The collision pinned him
under the fire wagon and he was severely injured.   The
street car was traveling south toward Garrison Avenue
at the time of the accident. The crossing at which the
accident occurred is what is commonly called a blind cor-
ner.   That is to say, it is a corner where a building is on
the property line and cuts off the view from the street.

The motorman testified that on this account he
began to cut off the power at B Street and reduced the
speed of the car to eight or ten miles an hour and began
sounding the bell continuously until the accident.   That
as he approached A Street, about a hundred feet away
from it the car was travelling at six or seven miles an
hour, and when fifty feet away from A Street the car
was traveling at the rate of five of six miles an hour;
that at the time of the accident the car was going at a
rate of speed at which it could be stopped in thirty or
forty feet.   The motorman also testified that he tried
to stop the car as soon as he saw the fire wagon.   Ac-
cording to the testimony of appellee the motorman
did not try to stop the car until he got within four or
five feet of the fire wagon and the street car at that
time was going at the rate of ten miles an hour.   There
was a city ordinance providing that all fire engines or
fire apparatus shall have the right of way upon any
street in the city of Fort Smith.   Another ordinance
provided that when a fire alarm is given by the gongs
attached to the fire wagons, all street cars shall be re-

quired to stop running until the fire wagons have passed or until the driver ascertains that the fire wagons are not moving in such a direction as to interfere with his car.

Without stating the testimony with more particularity it is sufficient to say that the evidence introduced in behalf of appellee showed that the accident occurred by reason of the negligence of the motorman in charge of the street car and evidence adduced in favor of appellant tended to show that there was no negligence on his part. The jury returned a verdict for appellee in the sum of $8,500 and from the judgment rendered appellant prosecutes this appeal.

*Hill, Fitzhugh & Brizzolara*, for appellant.

1.    There was clearly prejudicial error in instructions 7 and 8 given for plaintiff. They clearly predicated a liability upon the violation of the city ordinance. 116 Ark. 125. Another vice in these instructions is that they made it the motorman's duty absolutely to stop when it was a question for the jury as to whether the motorman was negligent in not stopping. 109 N.W. 619.

2.    The lower court confused the doctrine of imputed negligence with that of direct personal negligence. 8 L. R. A. (N. S.) 643, 671 and note; 7 So. Rep. 666; 76 S. W. 973; 28 So. Rep. 87.

3.    The evidence of witnesses Clayton, Euper, Cleaver and Gardner as to occurrences on Fifth Street cars at various subsequent times was inadmissible. Black Law & Practice in Accident Cases, § 223; 138 N. W. 320; 35 S. W. 297; 50 Ark. Law Rep. 450; 1 Greenleaf on Ev., § 14a; 1 Elliott on Ev., § 157.

4.    Miss Parke's testimony was admissible as relevant and material. It stated a fact. 89 Ill. App. 1; 15 So. 508; 39 Atl. 859, par. 7.

5.    The remarks of Ben Cravens, attorney for plaintiff, were highly prejudicial. 116 Ark. 514, 520.

6.    The verdict is excessive and the court erred in

refusing the instructions asked by defendant. 39 Atl.
110; 76 Ark. 356; 77 *Id.* 401; 81 *Id.* 368; 28 So. 87.

7. The testimony of plaintiff as to his earnings as
a prize-fighter was inadmissible. Kirby's Digest, §
1983; 75 Ark. 184; 118 Am. Dec. 35, 37; 115 N. Y. 507;
2 Sh. & Redf. on Negl., § 745; 41 Conn. 66; 87 Mass.
213, 216; 2 S. W. 878; 2 Bish. New Cr. Law, § 35; 1
Cox C. C. 177; Hughes Cr. Law & Pr., § 176; 119 Mass.
350; 1 Hawks (N. C.) 420; 3 Jones (N. C.) 131; 1 Car.
& M. 314; 10 Cox 371; 180 Fed. 779.

*Oglesby, Cravens & Oglesby,* for appellee.

1. There is no error in instructions 7 and 8. If
the evidence established the facts set out, the motor-
man was guilty of negligence. Specific objections
should have been made. 104 Ark. 409; 87 *Id.* 396. Ta-
ken in connection with all the instructions given, they
were not prejudicial. 117 Ark. 504; 108 *Id.* 292; 105
*Id.* 533; 111 *Id.* 272; 121 N. W. 12; 108 *Id.* 95.

2. In this case gross negligence was clearly estab-
lished. 95 N. W. 100; 113 S. W. 239; 121 N. W. 12;
54 S. W. 470.

3. The testimony of Euper *et al* was clearly com-
petent. 113 S. W. 239; 95 N. W. 100; 54 S. W. 470; 112
Ark. 457; 115 *Id.* 101.

4. The verdict is not excessive.

5. There was no testimony that plaintiff earned
anything as a prize-fighter. Athletics, including in-
struction in boxing, is legitimate. The motion to exclude
was only a general objection. 112 Ark. 394. His wages
were not connected with anything unlawful. 85 Ark.
9; 94 *Id.* 96; 103 *Id.* 114.

HART, J. (after stating the facts). It is insisted
by counsel for appellant that the court erred in giving
instructions numbered 7 and 8 at the request of appel-
lee. The instructions read as follows:

"7. If the evidence shows that defendant's mo-
torman did not hear the approach of the fire wagon
upon which plaintiff was riding, in time to stop his car,

before the wagon was struck, if it was struck, yet if the jury believes from the evidence that he could in the exercise of ordinary care have heard the approach of said fire wagon in time to stop his car before the collision and that his failure to hear the approach of the fire wagon was not due to the fact that it could not be heard, but to the fact that on account of his failure to listen, he did not hear same, and that he could have heard same in time to stop the car if he had listened, with ordinary care and attention, then the motorman was guilty of negligence in the operation of the car."

"8.   If the jury believe from the evidence that a fire alarm was given by the ringing of fire bells or by gongs attached to the hose cart or fire wagons, and that the motorman, operating the street car at the time of such alarm, heard such alarm before colliding with the fire wagon, provided he might reasonably apprehend that fire wagon was moving toward such car track, then it was his duty to stop the car until said fire apparatus passed, or until he ascertained that same was not moving in such direction as to interfere with the car. If the jury believe from the evidence, he could have heard same in time to stop the car before a collision if he had been listening with ordinary care and attention, the defendant is held to the same duty as if the motorman did in fact hear the alarm."

(1)   It will be remembered that there was a city ordinance which provides that when a fire gong is sounded all street cars shall be required to stop running until fire wagons shall have passed.   It is insisted that the instructions, in effect, told the jury that it was the duty of the motorman to stop the car upon hearing the approach of the fire wagon, or if in the exercise of ordinary care he could have heard the same and that a violation of this duty as provided by the ordinance was negligence.   In other words it is insisted that the instructions are open to the same objection as those condemned in the case of *Bain* v. *Fort Smith Light & Traction Company*, 116 Ark. 125.   We do not agree with counsel in this contention.   The instructions set out

above were not designed to cover the same field as those criticised in the Bain case. In the Bain case the court said that in a common law action against the street railway company for an injury alleged to have been caused by the company's negligence, if at the time of the injury the street car producing it is being operated in a manner that violated an ordinance of the city, such fact may be shown as tending to establish the allegations of negligence: The court held, however, that it would be erroneous to tell the jury that the operation of street cars in violation of a city ordinance was negligence as a matter of law. In the present case, at the request of appellant, the court expressly told the jury that the failure of appellant to comply with the city ordinance in question did not create a liability against appellant, but that it could be considered in measuring the care required of the respective operatives of the street car and fire apparatus. Moreover, in the instructions given at the request of appellee, the jury was specifically told that the ordinance in question did not create a liability against appellant and that if in the exercise of ordinary care the motorman should have known of the approach of the fire wagon and that such failure caused the accident, then such failure to obey such ordinance was a circumstance which the jury might consider in determining whether the company was or was not guilty of negligence. The instructions complained of were not directed against the violation of the ordinance in question; they had no reference to that phase of the case.

This was a common law action for negligence and the instructions complained of were directed toward what the jury might find constituted negligence on the part of appellant. They made no reference whatever to the ordinance in question and their correctness must be tested as if no such ordinance existed. It is well settled that it is not practicable that the court should state all the propositions of law involved in a case in one instruction. Where the whole law can not be embodied in one proposition, it is better that the instruction

should not conclude in "find for the plaintiff" or "find for the defendant," as the case may be. These instructions were not open to that objection. Instruction No. 7 simply told the jury that if they found certain facts to exist, then the motorman was guilty of negligence in the operation of the car. Instruction No. 8 was on the duty of the appellant. Both the instructions would have been just as appropriate if the fire wagon had been any other sort of a wagon.

It is true that street cars from necessity must travel on their tracks but persons crossing the tracks at a street crossing are not trespassers. Street car companies must anticipate that persons and vehicles will cross their tracks at street crossings, and their motorman must use ordinary care to discover them. What would be ordinary care would depend upon the circumstances of the particular case. Where there was nothing to obstruct the view the motorman might see persons about to cross the street, and it would not be necessary for him to listen. In the present case it was the contention of appellant that there was a building right up to the property line, and that this prevented the motorman from seeing the fire wagon. In other words, the only way the motorman could know of the approach of the fire wagon was by listening. Hence the instructions are not faulty because they only deal with the failure of the motorman to hear the approaching fire wagon. In short, it was not necessary to submit to the jury the question of whether he could have seen the fire wagon, for it was the contention of appellant that he could not have seen it and the testimony on this point is undisputed.

(2) It is next insisted that the court erred in permitting certain witnesses to testify that on subsequent days they were on one of appellant's street cars at the same point at which the accident occurred and heard the ringing of gongs and the sounding of the fire wagons on the pavement as they left the fire station in question in this case. Counsel based their right to exclude this evidence on the ruling of the court in the case

of *Ward* v. *Fort Smith Light & Traction Co.*, 123 Ark. 548. We do not think that case sustains the contention of counsel. There the plaintiff offered to prove that the witness had had a race with a street car at another time, and place, and that this car had passed his automobile while his automobile was going at the rate of thirty-eight miles per hour. The testimony was rejected because it was not shown that the cars were geared in the same way as the car under consideration in that case, or that they were so constructed that they would naturally have the same speed. For that reason we held that the excluded evidence related to collateral transactions and would tend to confuse the issues. Here the position of the car was practically the same as that testified to by the witnesses on the occasion of the accident and the witnesses had the same opportunity to hear the fire gongs. Therefore, the testimony was competent under the principles decided in *St. L., I. M. & S. R. Co.* v. *Kimbrell*, 111 Ark. 134, and *St. L., I. M. & S. R. Co.* v. *McMichael*, 115 Ark. 101.

Appellant was permitted to prove by one witness that she was familiar with the corner where the accident occurred and saw the accident. The witness was permitted to state that a brick building was right up to the property line and state the physical surrroundings as they existed, but was not permitted to state whether or not the motorman could have seen up A Street before he began to wind the brake. Error is assigned by counsel for appellant because the witness was not permitted to state whether or not this was a fact. If it be assumed that this was error no prejudice resulted to appellant from its exclusion. Appellant made a diagram of the locality and of the point where the car was when the motorman says he first saw the fire wagon and began to apply the brakes. The jury by consent were carried to the scene and permitted to view it. Therefore they could have ascertained for themselves whether or not the motorman could have seen the fire wagon from the point where he first began to wind the brake.

(3) One of the appellee's counsel, in his closing argument to the jury made the following statement: "I know that it is generally said that no one can get a verdict against the Fort Smith Light & Traction Company from a jury in Fort Smith regardless of the justice of the case." The record continues as follows: "Whereupon, the defendant objected to said remarks and at the time saved its exceptions. Thereupon, counsel for plaintiff attempted to withdraw said remarks and the court admonished the jury to disregard them." The remarks should not have been made by counsel, but we think their prejudicial effect was removed by the court. The record shows simply that the court admonished the jury to disregard them. What the court actually said to the jury is not in the record, but we must assume that the language was sufficient to remove the prejudice caused by the remarks. Webster says that the word admonish means to counsel against wrong practices; to caution or advise; to warn against danger of an offense. In the absence of a showing to the contrary, we will presume that the language of the court was sufficient to remove from the minds of the jury any prejudice created by remarks of the attorney. As soon as an objection was made to the remarks by opposing counsel, the counsel who made the remarks attempted to withdraw them from the jury. This was followed by an admonition from the presiding judge to the jury to disregard the prejudicial statements, and this we think was sufficient to cure the prejudice.

(4) It is insisted by counsel for appellant that the judgment should be reversed because appellee was allowed to testify as to his earnings from prize-fighting and training prize fighters. They insist that this evidence is not a proper element in the determination of the amount of recovery appellee would be entitled to by reason of his impaired earning capacity, because section 1983 of Kirby's Digest makes it unlawful for any person to fight prize fights or in any wise participate in them in the State of Arkansas. The record shows that appellee stated that in addition to being a fireman he

earned about $75 a month as boxing instructor or trainer. It is true that in response to a question on cross-examination he stated that he was a prize fighter, but when his whole testimony is read it is perfectly apparent that he said that he earned $75 a month as a boxing instructor. It is not apparent from his testimony that he engaged in prize fighting or earned any money from training other people to fight a prize fight. His testimony plainly shows that his additional earnings were made by being a boxing instructor or a trainer of people who desire to practice boxing. This is not prohibited by the statutes of the State, and the testimony was properly admitted to go to the jury.

Finally it is insisted that the verdict is excessive, The jury returned a verdict for appellee for $8,500. The attending physician stated that on examination of appellee shortly after the accident he found that the large bone of the leg had been torn away from its attachments, pushed through the ligaments and flesh for between two and three inches outside the skin. He also described another fracture and the treatment that was necessary to be given while appellee was in the hospital. He said that appellee was confined to the hospital for about six weeks and suffered excruciating pain nearly all the time he was there. We quote from the record the physician's description of appellee's injuries as follows:

"Q. Can you describe that injury if he will take off his shoe and show to the jury how he was hurt?

A. Yes, sir.

Plaintiff removed his shoe and the doctor showed the jury how and where the leg was injured.

A. We found that this bone here was broken and the ligaments were badly torn and lacerated, and it was sticking out through the skin here, pushed through here two or three inches.

Q. That is the big bone?

A. Yes, sir; that is the hinge bone here was projecting the internal malleolus and this bone here is a hinge joint and was projecting here, and the tibia which

is down on the leg there had an attachment to both bones, and these ligaments on top here are necessary for the small bone in the foot and they come down here over the foot and this place here was mangled and torn from its ligaments and these bones on this joint here were just pressed up like that. It was necessary in order to put this bone back to use a great deal of force, even more than we were able to exert to replace it so it was necessary to make a little incision here and then we sutured it over, and with very slight infections it healed very nicely.

Q. And he was able to leave the hospital in how long?

A. About six weeks."

(5) He further stated that there was no doubt that appellee would have a permanently weak ankle, and that it would always give him trouble; that appellee would never be able to have the, same use of his leg as he did before the injury. It is true he stated in one place that it would be one or two years before appellee's leg would be anything like normal again, but when all his testimony is read, it is evident that the physician meant that it would be about two years before the stiffness would get out of appellee's leg and it approached anything like a normal state. The witness states positively that the ankle was permanently injured, and that it would be weaker than appellee's other ankle for the remainder of his life, and it could never stand much pressure. From his testimony the jury might readily infer that appellee could never again follow the avocations in life for which he had fitted himself, viz., fireman and boxing instructor. He was only twenty-five years of age at the time he received his injuries and from his physical appearance and mental condition as disclosed by the evidence, the jury might have found that his earning capacity in his chosen vocations in life would be increased in the near future. He was earning $75 a month as fireman and an additional $75 as boxing instructor. He had not fitted himself to earn money by a sedentary occupation and under all

the circumstances, taking into consideration the excruciating pain he suffered and his decreased earning capacity we do not think it can be said that the verdict is excessive.

(6)  Other assignments of error in regard to giving and refusing instructions are pressed upon us for a reversal of the judgment. We do not deem it necessary to set them out or to discuss them in detail.  The court in instructions correctly told the jury that no negligence of the driver of the fire wagon affected appellee's right to recover unless the negligence of the driver of the fire wagon was the sole cause of the accident.  The records show that appellee had no control whatever over the driver of the fire wagon, that it was his duty to ride beside the driver in the absence of his chief and that it was against the rules for him to direct the driver in regard to his duties.  In other words, under the rules and regulations of the fire department he had no control whatever over the driver.  It can be readily understood how this regulation would operate to the safety of both.  It was necessary that the wagon should be driven at a rapid rate of speed through the streets and the driver's attention would be wholly engrossed in managing his team, and it would be dangerous for him to be distracted by any one attempting to direct him how to discharge his duties.

The judgment will be affirmed.