CRANFORD *v.* STATE.

Opinion delivered June 25, 1917.

1. EVIDENCE—PRIOR STATEMENTS—ASSAULT.—In a prosecution for assault with intent to kill, evidence of statements made by defendant, a few months prior to the killing as to his attitude toward "scabs," to which class the prosecuting witness belonged, are admissible.

2. EVIDENCE—ASSAULT—STATEMENTS ON A SIGNBOARD.—Defendant was charged with an assault with intent to kill upon one K. K. was a strikebreaker and had been denominated a "scab" by defendant. *Held,* parol evidence was admissible to prove the writing upon a sign placed on defendant's premises, the signboard being lost: "No scabs allowed to cross this way," it appearing that the strikebreakers passed that place going to and from work.

3. EVIDENCE—CONDUCT OF BLOODHOUNDS.—Evidence of the performance of bloodhounds in trailing offenders is admissible when the proper foundation for the introduction of such testimony is laid.

4. VENUE—PROOF.—Venue may be established by a preponderance of the evidence, and may be proved by circumstantial evidence.

5. JUDICIAL NOTICE—CITIES, TOWNS AND COUNTIES.—Courts take judicial notice of the location of cities and towns in the State as well as boundaries of counties.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*Brickhouse & Chamberlin,* for appellant.

1. Outside the detailed action of the bloodhounds, there is absolutely no testimony to sustain a conviction. Sometimes bloodhounds are capable of trailing criminals, but the action of bloodhounds does not constitute a better guide to the truth than the sworn testimony of human beings. Defendant and a disinterested witness both swear that Cranford was at home when the shot was fired. This testimony overcomes the conclusions reached by the dogs. 64 So. 215; 97 N. W. 593. There

was no corroboration whatever of the dogs which in any wise connects defendant with the crime. 90 Ark. 123. Bloodhound evidence is unsafe. 97 N. W. 593.

2. The venue was not proven. 77 Ark. 119.

3. The statements, attributed to defendant, if ever made, were incompetent, as they had no connection whatever with the commission of the crime. The statement as to "scabs" was no part of the *res gestae* and inadmissible. It was prejudicial. 73 Ark. 152. As to the sign nailed on a tree, its purpose was to create prejudice. It was error to admit proof of what it contained. The sign was not lost or destroyed, nor was it shown that Cranford had anything to do with it. The sign was the best evidence and it was error to admit secondary evidence. 82 Ark. 102.

4. There is absolutely no testimony to sustain the verdict outside of the unreliable dog trailing.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The statement as to "scabs" was not irrelevant. It was admissible as showing a motive. 62 Ark. 119; 39 S. W. 672; 2 Ind. 438; 93 Ind. 272; 85 Ala. 7. No objections were made to the testimony.

2. No objection was made as to the sign. Part of the testimony was admissible at least. 86 Ark. 23; 96 *Id.* 52; 84 *Id.* 377; 82 *Id.* 555; 87 *Id.* 554. The testimony was not prejudicial, as the facts were otherwise proven by competent testimony. 82 Ark. 447; 79 *Id.* 453; 78 *Id.* 77; 103 *Id.* 315; Kirby's Digest, § 2229. It was competent to show the *animus* of defendant against that class of persons of which the prosecuting witness was a member. 85 Ala. 7; 93 Ind. 272.

3. The evidence is sufficient to sustain the verdict. The testimony as to the action of the dogs was competent. No proper objections were made. Bloodhound evidence was admissible for what it was worth, at least. 8 R. C. L., § 177; 98 Ala. 10; 92 Miss. 613; 85 Kans. 435; 147 Ala. 97; 143 N. C. 607; 35 So. 76; 46 Tex. Cr. 461;

145 Ala. 46; 174 Ind. 395; 103 Ky. 41; 77 Oh. St. 34; 12 Cyc. 393. The dogs were trained, tested and accurate, and testimony as to their trailing was competent. Nebraska only holds otherwise. 97 N. W. 593. See 69 Ark. 177; 31 *Id.* 196.

4. The venue was proven. This court will take judicial knowledge that Bauxite is in Saline County. 90 Ark. 596. Venue may be proved by circumstantial evidence. The Saline County line is eight miles from Bauxite and there is testimony that the crime was committed not more than two miles from Bauxite. 99 Ark. 134; 91 *Id.* 492.

5. Only the substance of the testimony is set out, and its sufficiency will be presumed. 74 Ark. 427; 57 *Id.* 459; 105 *Id.* 608-614. Where all the evidence is not set out in the bill of exceptions, it will be presumed that the evidence is sufficient. 84 Ark. 73; 77 Id. 195; 74 Id. 551; 72 *Id.* 21, etc.

HUMPHREYS, J. Appellant, R. C. Cranford, was indicted, tried and convicted in the Saline Circuit Court for assault with intent to kill H. W. O'Kelly, and his punishment was fixed at one year in the penitentiary.

From the judgment and sentence, he has prosecuted an appeal to this court.

It is insisted that the court erred in admitting statements made by appellant during the summer and prior to the alleged assault on the 1st day of September, 1916, as follows:

"If these scabs knew what I know they would be at home with their families."

"If those damned scabs knew what I know, they would be home with their families if they have any families."

(1) O'Kelly, who was shot, was one of a class denominated by appellant and other strikers as "scabs." The witnesses testified that appellant made these statements to them during the summer prior to the shooting on September 1, 1916, and while a strike was on at the Bauxite Company's plant, at Bauxite, Arkansas. The

testimony was clearly admissible as tending to establish bad feeling toward a class of which O'Kelly was a member, and a probable motive for committing the crime with which appellant was charged.

(2)  It is next insisted that the court erred in permitting witnesses to testify that a sign was put up in front of appellant's place during the strike, in words as follows: "No scabs allowed to cross this way." Parties referred to in the sign had been going to and from their work over a trail way across the land appellant lived on. He had called them "scabs" on several occasions and had assumed a hostile attitude toward some of them. The sign was posted in front of his place. When on the witness stand, he did not deny being the author of the sign. Under all the facts and circumstances, the objection to this testimony on the ground that the evidence did not show appellant knew, or had anything to do with putting up the sign, is not tenable. It is said, however, that it was error to admit parol proof of the inscription on the signboard. Three witnesses testified to the inscription without objection on that ground. Even if the inscription on the board were the primary and best evidence, which we doubt, it was not prejudicial error to permit the third witness to testify to the inscription, when the inscription had been sworn to by two other witnesses without objection for that reason. *Castevens* v. *State,* 79 Ark. 453; *Crowley* v. *State,* 103 Ark. 315.

We doubt if the inscription comes within the rule of written instruments. but if so, this writing must have been treated as in the possession and control of appellant, if in existence, and, being in his possession, it was admissible to prove the contents by secondary evidence. The witness testified that he did not know where the signboard was, so, if lost or destroyed, it was admissible to establish the inscription by parol testimony.

But it is insisted that the inscription in no way connected appellant with the crime. We think it is a circumstance tending to show *animus* against a class of

which O'Kelly was a member and to establish a motive
for the assault.

Again, it is insisted that the court committed re-
versible error in admitting the action and performance
of bloodhounds in trailing the supposed offender. Im-
mediately after O'Kelly was shot, on the morning of
September 1, 1916, guards were placed at the scene of
the shooting to prevent anyone from walking over the
trail. O'Kelly was removed to Bauxite, and Bob King,
owner of the bloodhounds, was brought to Bauxite from
Conway, arriving at the scene of shooting about ten
o'clock on the same day. The dogs took up a hot trail
at a hickory tree about twenty yards from where O'Kelly
was shot. The trail was not lost by the dogs until they
arrived at appellant's house. The dogs were let in the
house and went to a' drawer of a dresser and scratched
on it. The drawer was opened and five No. 12 gauge
cartridges were found. The dogs then went to the north
room in which a 12 gauge double-barrel shotgun was
found under the bed. The right barrel had been re-
cently fired. The dogs were then carried in an automo-
bile to Bauxite, where they again took up the trail and
located appellant in the office where he was under arrest.
The dogs were of a pure strain of blood, registered, and
the oldest one was a graduate of a training school for
bloodhounds. Both dogs were experienced in trailing
offenders of the law. The testimony showed that they
were accurate, certain and reliable.

(3) This court has held in two recent cases that the
evidence of the performance of bloodhounds in trailing
offenders is admissible when the proper foundation for
the introduction of such testimony is laid. *Holub* v. *State*,
116 Ark. 227; *Padgett* v. *State*, 125 Ark. 471.

Preliminary to the introduction of evidence touch-
ing the action and performance of the bloodhounds, suffi-
cient proof was given showing that the dogs possessed
qualities, training and accuracy in trailing human beings.
The proper foundation was laid for the admission of
this testimony.

Appellant contends that the evidence is not sufficient to sustain the verdict. The question of whether appellant shot O'Kelly as alleged, was an issue of fact to be determined by the jury. A case will not be reversed on appeal if there is any legal evidence to support the verdict. If the evidence of the action and performance of the bloodhounds were eliminated, it might be argued with some force, on motion for new trial, that the verdict was contrary to the weight of the evidence. But even then, on appeal, there would be much legal evidence left to support the verdict. When the evidence of the action and conclusion of the bloodhounds is taken in connection with all the other facts and circumstances in the case, it can be said with a degree of certainty that there is ample legal evidence to support the verdict.

(4-5) Lastly, it is insisted that the case ought to be reversed because of the absence of proof of venue. The facts established that the shooting occurred within about two miles of the town of Bauxite. Venue may be established by a preponderance of the evidence. Direct evidence is not required. It may be proved by circumstantial evidence. The courts will take judicial notice of the location of cities and towns in the State, as well as boundaries of counties. Bauxite is in Saline County and the circumstances and direct proof, when taken together, clearly show that the crime was committed within that county. The following cases support the conclusion of the court that the venue in the instant case was sufficiently established. *Holloway* v. *State,* 90 Ark. 123; *Lyman* v. *State,* 90 Ark. 596; *Douglass* v. *State,* 91 Ark. 492; *Farr* v. *State,* 99 Ark. 134; *King* v. *State,* 110 Ark. 595.

We find no reversible error in the record, and the judgment is therefore affirmed.